DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant Thomas Tomovich appeals from the judgment of the Lorain County Court of Common Pleas which stayed his causes of action pending arbitration. We affirm.
 I {¶ 2} On June 25, 2006, Tomovich entered into a contract for home improvements with an entity named USA Waterproofing Foundation Services, Inc. ("USAWFS"). Tomovich became dissatisfied with the work being performed under the contract and attempted to cancel the contract on December 18, 2006. On *Page 2 
January 3, 2007, Tomovich filed a complaint against Defendant-Appellees USAWFS, USA Waterproofing, Inc. ("USAW"), and Steven Rusk. In his complaint, Tomovich alleged that USAWFS was a "ghost entity" because it was not registered to do business in the State of Ohio. Tomovich also asserted that USAW was the registered entity that was in some manner related to this "ghost entity." Tomovich's complaint also stated that it was Rusk who negotiated with him and executed the contract on behalf of USAWFS.
 {¶ 3} In his complaint, Tomovich alleged numerous violations of the Consumer Sales Practices Act ("CSPA"). In response to the complaint, on February 6, 2007, the three defendants filed a joint motion to stay the proceedings pending arbitration. The defendants attached the contract Tomovich signed which contained an arbitration clause to their motion. Tomovich opposed the motion to stay, primarily arguing the merits of his underlying cause of action. On March 6, 2007, the trial court held a hearing on the motion to stay.
 {¶ 4} From the record before this Court, it appears that the trial court announced its judgment and served that judgment on the parties on March 21, 2007. On April 10, 2007, Tomovich filed "objections" to the trial court's decision. In those objections, Tomovich asserted that USAWFS did not become *Page 3 
registered as a fictitious name used by USAW until March 19, 2007.[1]
On April 13, 2007, the trial court's judgment staying the matter pending arbitration was finally journalized. In its entry, the trial court stayed the entire action pending arbitration. Tomovich timely appealed the trial court's judgment, raising three assignments of error for review.
 II Assignments of Error Number One, Two, and Three "THE TRIAL COURT HAS COMMITTED REVERSIBLE AND PREJUDICIAL ERRORS IN SUBMITTING THE PARTIES' DISPUTE TO ARBITRATION[.]"
 {¶ 5} Initially, we note that Tomovich has presented three assignments of error in his brief. Each of these alleged errors begins as quoted above. Tomovich then provides specific arguments in subheadings under each error. For ease of analysis, we have consolidated Tomovich's assignments of error into the above assignment of error.
 {¶ 6} In his brief, Tomovich alleges that numerous grounds existed to support reversing the trial court's decision. Consequently, we first detail our standard of review and then review his claims.
 {¶ 7} Generally, when an appellate court determines whether a trial court *Page 4 
properly denied a motion to stay proceedings pending arbitration, the standard of review is whether the trial court abused its discretion.Reynolds v. Lapos Const, Inc. (May 30, 2001), 9th Dist. No. 01CA007780, at *1. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. However, when the trial court determines purely legal questions, this Court will review its judgment de novo. Akron-Canton Waste Oil,Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 602.
 {¶ 8} Ohio public policy favors arbitration. Schaefer v. Allstate Ins.Co. (1992), 63 Ohio St.3d 708, 711. This policy is reflected in R.C.2711.02(B) which provides:
 "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration."
Accordingly, "unless it may be said with positive assurance that the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute[,]" the trial court should stay the proceedings. Neubrander v. Dean Witter Reynolds, Inc. (1992),81 Ohio App.3d 308, 311. Consequently, if a dispute even arguably falls within the arbitration provision, the trial court must stay the *Page 5 
proceedings until arbitration has been completed. Featherstone v.Merrill Lynch, Pierce, Fenner Smith, Inc., 9th Dist. No. 04CA0037,2004-Ohio-5953, at ¶ 5.
 {¶ 9} The arbitration provision at issue provides as follows:
 "Any controversy or claim arising out of or related to this contract, or breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."
 {¶ 10} Despite Ohio's stated public policy, an arbitration clause may be found to be unenforceable on grounds existing at law or in equity for the revocation of a contract. R.C. 2711.01(A); Pinette v. Wynn'sExtended Care, Inc., 9th Dist. No. 21478, 2003-Ohio-4636, at ¶ 7. Tomovich asserts that there are grounds in both law and equity that support reversal of the trial court's decision to stay this matter. We separately review each of his claims.
Valid Contract / Authority {¶ 11} Tomovich first asserts that arbitration could not be ordered in this matter because the parties do not have a valid contract. We disagree.
 {¶ 12} To the extent that Tomovich filed suit against Rusk individually, we find no merit in his contentions that Rusk lacked the authority to invoke the arbitration provision. It is undisputed that Rusk was acting as an agent for USAWFS when he undertook his actions. In that respect, this Court has noted as follows: *Page 6 
 "[W]e find that the broadly worded contractual language indicates that the parties' basic intent was to provide a single arbitral forum to resolve all disputes arising as a result of the home inspection. In order to settle all such controversies in the same place, claims against non-parties like Appellant, whose interests are directly related to those in privity of contract, must be read to fall within the scope of the clause. Appellees will not be allowed to circumvent their promise to arbitrate the home inspection matter by simply suing Appellant separately from Castle. Traditional agency theory also binds a non-party agent to the terms of an arbitration agreement made by his principal if the agent's actions served as the basis for his potential liability." (Internal citations and quotations omitted.) Manos v. Vizar (July 9, 1997), 9th Dist. No. 96 CA 2581-M, at *1-2.
We find our reasoning in Manos to be applicable the facts herein. Tomovich's complaint seeks to recover damages from Rusk's actions taken as an agent for USAWFS. Moreover, the parties' arbitration clause is broadly worded to encompass any controversy arising from performance of the underlying contract. We find, therefore, that Rusk had the authority to invoke the arbitration provision.
 {¶ 13} Tomovich makes a similar argument with respect to USAW. Tomovich asserts that any contract that he entered into was with USAWFS, a company which was not registered in the State of Ohio when the contract was executed. It is undisputed, however, that during the course of these proceedings, USAWFS was registered as a fictitious name of USAW. As such, there are not two entities at issue. Rather, there is one entity which uses two different names. As one of those names appeared on the contract at issue, we find that both USAWFS and USAW are bound under the arbitration agreement. Accordingly, we find no error in the trial court's determination that the two names were utilized *Page 7 
by one company and that USAW was included under the contract's arbitration provision.
 {¶ 14} Tomovich next argues that the failure of USAWFS to register with the Secretary of State precludes the company from moving to stay this matter. We disagree.
 {¶ 15} R.C. 1703.03 mandates that all corporations not incorporated under the laws of Ohio must hold an uncancelled and unexpired license to transact business in the state. R.C. 1703.29(A) provides the consequences for the failure to hold such a license and provides:
 "The failure of any corporation to obtain a license under sections 1703.01 to 1703.31, inclusive, of the Revised Code, does not affect the validity of any contract with such corporation, but no foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license. Before any such corporation shall maintain such action on any cause of action arising at the time when it was not licensed to transact business in this state, it shall pay to the secretary of state a forfeiture of two hundred fifty dollars and file in his office the papers required by divisions (B) or (C) of this section, whichever is applicable."
Under the plain language of R.C. 1703.29(A), USAWFS's failure to register does not affect the validity of the parties' contract. Rather, the above provision serves only to prevent the company from maintaining an action in any court until it has registered.
 {¶ 16} Additionally, "R.C. 1703.29(A) does not prevent an unlicensed corporation from defending a suit brought against it in Ohio." P.K.Springfield, Inc. v. Hogan (1993), 86 Ohio App.3d 764, 769, citingColegrove v. Handler *Page 8 
(1986), 34 Ohio App.3d 142, 145. In Colegrove, the Tenth District determined that R.C. 1703.29 did not prevent an unregistered company from seeking a stay of the proceedings pending arbitration. Id. We agree with Colegrove's conclusion.
 {¶ 17} As noted above, R.C. 1703.29 prevents an unregistered company from "maintaining] any action[.]" R.C. 2307.01 defines "action" as follows:
 "An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense."
In this action, neither USA Waterproofing entity is seeking redress against Tomovich. We conclude, therefore, that neither entity is maintaining an action within the meaning of R.C. 1703.29(A). ContrastHogan, 86 Ohio App.3d at 769 (finding that bringing a cross-claim constitutes maintaining an action). The trial court, therefore, did not err in concluding that the USAWFS had the authority to move to stay the proceedings.
 {¶ 18} Tomovich also asserts that arbitration cannot be compelled because he rescinded any contract that was entered into by the parties. Tomovich has not claimed at any point in these proceedings that the arbitration clause would limit his remedies and preclude the arbitrator from rescinding the contract. Moreover, the arbitration clause at issue places no limits on the arbitrator's authority to order such a remedy. "Because an arbitrator can resolve the issue of whether [Tomovich] may revoke the Contract, we find [his] election of recission as a remedy would not abrogate the effect of an enforceable arbitration provision." *Page 9 Haga v. Martin Homes, Inc. (Apr. 19, 1999), 5th Dist. No. 1998AP050086, at *6. Moreover, if we were to accept Tomovich's position, any party who asserts that he or she has rescinded a contract could avoid enforcement of an otherwise valid arbitration agreement. We decline to adopt such a position.
Unconscionability {¶ 19} Another ground for invalidating an arbitration agreement is unconscionability. See Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, at ¶ 29. The party seeking to establish that an arbitration clause is unconscionable must show that the provision is both procedurally and substantively unconscionable. Id. at ¶ 30, citingCollins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834.
 {¶ 20} Procedural unconscionability concerns the formation of the agreement and occurs where no voluntary meeting of the minds was possible. Bushman v. MFC Drilling Inc. (July 19, 1995), 9th Dist. No. 2403-M, at *3, quoting Collins, 86 Ohio App.3d at 834. In order to determine whether or not a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed. Eagle at ¶ 31. Additionally, where "there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be *Page 10 
adhesive in nature," there is "considerable doubt that any true agreement ever existed to submit disputes to arbitration." Williams v.Aetna Fin. Co., D.B.A. ITT Financial Serv. (1998), 83 Ohio St.3d 464,473.
 {¶ 21} Substantive unconscionability refers to the actual terms of the agreement. Contract terms are unconscionable if they are unfair and commercially unreasonable. Bank One, N.A. v. Borovitz, 9th Dist. No. 21042, 2002-Ohio-5544, at ¶ 16, citing Dorsey v. Contemporary Obstetrics Gynecology, Inc. (1996), 113 Ohio App.3d 75, 80.
 {¶ 22} In order to determine whether a given contract provision is unconscionable, courts must examine the particular facts and circumstances surrounding the agreement. Lightning Rod Mut. Ins. Co. v.Saffle (Nov. 6, 1991), 9th Dist. No. 15134, at *3. We now turn to those facts and circumstances.
 {¶ 23} In his motion in opposition to the motion to stay, Tomovich did not include any argument related to unconscionability. Instead, he argued the merits of his claims and asserted that the defendants' inequitable conduct mandated that their motion to stay be denied. Consequently, there is no evidence in the record before this Court to support a finding of procedural unconscionability. Contrast Porpora v.Gatliff Building Co., 160 Ohio App.3d 843, 2005-Ohio-2410, at ¶ 10-18
(detailing the evidence presented to the trial court which supported a finding of unconscionability). In Porpora, the trial court received significant evidence of procedural unconscionability. Specifically, the drafter of the arbitration provision *Page 11 
in Porpora described the provision as adhesive. Id. at ¶ 12. In addition, the parties challenging the provision submitted affidavits which stated that they were unrepresented by counsel when the contract was signed and had never signed the type of contract at issue before. Id. at ¶ 11. Those same parties also attested that the arbitration provision was never explained to them. Id. Unlike the parties inPorpora, Tomovich offered no evidence to support a finding of procedural unconscionability. Tomovich, therefore, did not meet his burden to demonstrate that the arbitration provision was reached through procedural unconscionability.
 {¶ 24} We also note that from the docket it appears that the trial court announced its judgment on March 21, 2007. This judgment, however, was not journalized until April 13, 2007. Before the trial court journalized its decision, it requested that the parties brief the issue of whether arbitration was cost prohibitive. In his brief on the issue, Tomovich asserted that the arbitration at issue was cost prohibitive. On appeal, Tomovich argues that Porpora mandates a denial of the motion to stay based upon the costs of the arbitration. Contrary to Tomovich's assertion, the cost of arbitration was only one factor in the decision reached by this Court in Porpora. See id. at ¶ 14-18. InPorpora, we also focused on the unfair terms contained in the arbitration provision. Specifically, this Court noted that the contract was "skewed" in favor of the contractor because it precluded commencing arbitration until the contractor unilaterally determined that the contract work was substantially complete. Id. at ¶ 15. Unlike inPorpora, the *Page 12 
provision at issue does not contain those types of unfair terms. Moreover, Tomovich has provided no law, and this Court has found no authority, for the proposition that cost, standing alone, is sufficient to find an arbitration clause substantively unconscionable. Even if we were to conclude that the cost of this arbitration satisfied Tomovich's burden to establish substantive unconscionability, as noted above he supplied no evidence of procedural unconscionability. The trial court, therefore, did not err in finding that the arbitration clause was not unconscionable.
Public Policy {¶ 25} A contract injurious to the interests of the state will not be enforced. King v. King (1900), 63 Ohio St. 363, 372. 17 Ohio Jurisprudence 3d (1980) 528, Contracts, Section 94, states:
 "Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like. Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy. Moreover, actual injury is never required to be shown; it is the tendency to the prejudice of the public's good which vitiates contractual relations." (Footnotes omitted.)
The Supreme Court has cautioned, however:
 "Agreements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the *Page 13 
reasons on which that doctrine rests." Gugle v. Loeser (1944), 143 Ohio St. 362, paragraph one of the syllabus.
 {¶ 26} In his argument, Tomovich asserts that the instant contract violates public policy because USAWFS entered into the contract without being a registered entity. As noted above, however, Ohio law expressly declines to invalidate contracts on that basis. Consequently, the enforcement of such a contract cannot be said to be injurious to the interests of the State. Tomovich's public policy argument fails.
CSPA Claims {¶ 27} Tomovich argues that his CSPA claims should not be subject to binding arbitration. In support of his claim, Tomovich has relied heavily upon Eagle. Eagle, however, does not stand for the proposition that CSPA claims are not subject to arbitration. Rather, Eagle
reinforced longstanding law that statutory claims may be arbitrated so long as the complaining party may "vindicate [his or her] statutory cause of action." Eagle at ¶ 27, quoting Gilmer v. Interstate/JohnsonLane Corp. (1991), 500 U.S. 20, 28. In determining whether an arbitration proceeding vindicates a statutory cause of action, the Court noted that it was important to examine whether the arbitration provision fulfills "the statute's remedial and deterrent functions[.]" Id. TheEagle Court also noted that nothing in Ohio's statutory scheme prevents the arbitration of CSPA claims. Id. This Court has subsequently reaffirmed our view that there exists no across-the-board *Page 14 
bar to arbitrating CSPA claims. George Ford Const, Inc. v. Hissong, 9th Dist. No. 22756, 2006-Ohio-919, at ¶ 15-18.
 {¶ 28} In refusing to enforce the arbitration clause at issue, theEagle Court noted that several of its provisions directly conflicted with the stated goals of the CSPA. That Court noted that "[w]hen an arbitration clause vanquishes the remedial purpose of a statute by imposing arbitration costs and preventing actions from being brought by consumers, the arbitration clause should be held unenforceable."Eagle at ¶ 68.
 {¶ 29} None of the provisions which the Eagle Court found offensive to the CSPA's purposes are present herein. The instant clause contains no confidentiality provision. Accordingly, the results of the arbitration would be readily available to the Attorney General and there would be no bar to them becoming public information. Compare Eagle at ¶ 72. Furthermore, there is no cost associated with receiving findings of fact and conclusions of law. Compare Eagle at ¶ 71. Further still, there is no provision which restricts the causes of action that may be maintained by Tomovich. Compare Eagle at ¶ 73-74; see, also, Schwartz v. AlltelCorp., 8th Dist. No. 86810, 2006-Ohio-3353, at ¶ 30. Accordingly, nothing in the instant arbitration provision offends the remedial purpose of the CSPA nor inhibits the ability of Tomovich to vindicate its purpose. As such, we again decline to adopt a bright line rule that CSPA causes of action are not subject to arbitration. Furthermore, under the specific provision presented, *Page 15 
we find no provisions which would limit Tomovich's remedies under the CSPA, nor any provisions which infringe upon the remedial nature of the CSPA. As such, the trial court did not err in submitting Tomovich's CSPA claims to arbitration.
Conclusion {¶ 30} Having reviewed each of Tomovich's claims, we find that they lack merit.
 III {¶ 31} Tomovich's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 16 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P. J. Dickinson, J., concur.
[1] Tomovich provided no authenticated evidence of this fact in the trial court. However, for our review, we have assumed such a fact to be true because the parties do not dispute it. *Page 1